611 A.2d 332

**Harry G. JONES, Glenn–Price Agency, Inc., Petitioner,**

**v.**

**Constance B. FOSTER, Insurance Commissioner, Commonwealth of Pennsylvania, Respondent.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs March 13, 1992.

Decided June 1, 1992.

Harry G. Jones, pro se.

Zella M. Smith, Department Counsel, for respondent.

Before CRAIG, President Judge, and PELLEGRINI, J., and BLATT, Senior Judge.

CRAIG, President Judge.

Harry G. Jones, pro se, appeals from an order of the Commissioner of the Pennsylvania Department of Insurance, who suspended Jones' insurance agent's license for six months and penalized Jones $71,000. We affirm.

The issue in this case is whether the commissioner erred in suspending Jones' license for six months and imposing two penalties: (1) a $70,000 penalty for Jones' solicitation for Farmers Group, an insurance company unauthorized to do business in Pennsylvania; and (2) a $1,000 penalty for acting as an agent for Farmers Group.

The facts in this case, as found by the commissioner in her order, are as follows. Jones is a licensed insurance agent and is president of the Glenn–Price Agency, Inc. Jones is the former president of I.D. Craig Services Corporation, a Pittsburgh based corporation which provided various services to its members for a fee, including obtaining group health insurance coverage through Blue Cross of Northeastern Pennsylvania and Pennsylvania Blue Shield. Jones had an arrangement with Farmers Health Trust Group, (Farmers Health), which at one time was underwritten by Blue Cross and Blue Shield, to provide I.D. Craig members with Blue Cross and Blue Shield group health insurance coverage through Farmers Health.

I.D. Craig is currently in Chapter 7 bankruptcy. After I.D. Craig filed for bankruptcy, Glenn–Price purchased from the bankruptcy trustee the contract rights and mailing lists of former I.D. Craig members who had health insurance coverage through Farmers Health underwritten by Blue Cross and Blue Shield. Glenn–Price became the conduit for former I.D. Craig members who sought group coverage offered by Farmers Health. On November 30, 1989, Blue Cross and Blue Shield notified I.D. Craig members that they would no longer provide coverage through Farmers Health.

On February 2, 1990, Jones incorrectly notified I.D. Craig members that the U.S. Federal Court had confirmed Glenn–Price as an interim billing service for I.D. Craig. The letter

also set forth the coverages available and premiums due if an I.D. Craig member chose to enroll in a "new comprehensive medical program." On February 16, 1990, Jones notified I.D. Craig members that Farmers Health had obtained a new carrier, the Farmers Group Medical Insurance Plan, (Farmers Group), which would provide members with a comprehensive major medical program. Farmers Group is not a licensed insurer in Pennsylvania.

On March 16, 1990, Jones notified I.D. Craig members that the last date for enrollment with the Farmers Group was March 31, 1990, and provided to I.D. Craig members an outline of benefits available under Farmers Group.

The commissioner stated in her order that Jones violated § 209 of the Insurance Act,[1] 40 P.S. § 47, which states, in relevant part:

> *Any person* negotiating or *soliciting any policy of insurance* or suretyship in this Commonwealth, collecting or forwarding premiums or delivering policies *for any company*, association, or exchange *to which a certificate of authority has not been granted*, shall be deemed to be the agent of the company, association, or exchange, in any legal proceedings brought against it. Such person shall be required to pay a civil penalty of not less than one thousand dollars ($1,000) nor more than ten thousand dollars ($10,000) for each offense to be recovered on behalf of the Commonwealth. (Emphasis added)

The commissioner stated that Jones violated § 209 of the Act fourteen times because three witnesses testified at the hearing before the commissioner that they received three letters of solicitation from Jones and Jones collected five premium checks from one I.D. Craig member. The commissioner assessed a $5,000 penalty for each violation for a total penalty under § 209 of $70,000.

The commissioner also penalized Jones $1,000 for a violation of § 3(a) of the Surplus Line Law,[2] 40 P.S. § 1006.3(a), which states:

1. Act of May 17, 1921, P.L. 789, No. 285, *as amended.*
2. Act of January 24, 1966, P.L. (1965) 1509, *as amended.*

(a) *No person* in this Commonwealth *shall directly or indirectly act as an agent for,* or otherwise represent or aid on behalf of another, *any insurer not licensed to transact insurance in this Commonwealth* in the solicitation, negotiation, procurement or effectuation of insurance, or renewals thereof, or forwarding of applications, or delivery of policies or contracts or inspection of risks, or fixing of rates, or investigation or adjustment of claims or losses, or collection of forwarding of premiums, or in any manner represent or assist such insurer in the transaction of insurance. (Emphasis added.)

The commissioner penalized Jones $1,000 because § 10(b) of the Surplus Line Law, 40 P.S. § 1006.10(b), provides that for every violation of the Law, the commissioner may penalize a person up to $1,000.

The commissioner also suspended Jones' insurance license for six months, relying upon § 603 of the Act, 40 P.S. § 233, and the regulations promulgated thereunder, 31 Pa.Code § 33.7(a)(7). Section 603 states, in relevant part:

Before any such license is granted, the applicant shall first make answer, in writing and under oath, to interrogatories on forms and supplements such as the Insurance Commissioner shall prepare and submit, which answers shall be vouched for by indorsement of the company, association, or exchange interested, and to the effect that the applicant *is of good business reputation,* and of experience in underwriting, other than soliciting, *and is worthy of a license.* (Emphasis added.)

As a basis for the suspension, the commissioner relies upon the regulation, 31 Pa.Code § 33.7(a)(7), which states in relevant part:

(7) [The Department may deny a license if] the applicant does not possess the professional competence and general fitness required for the doing of the business of insurance. Such determination will be made after thorough examination of the pertinent information and documents available to the Department which pertain to the honesty, reliability,

efficiency, educational training and business experience, and reputation of the applicant.

The commissioner, relying upon § 605 of the Act, 40 P.S. § 235, which states that insurance agents shall be personally liable on all contracts made by or through him on behalf of any company not authorized to do business in Pennsylvania, also held Jones personally liable for all contracts he secured.

■ Jones now appeals to this court seeking to overturn the decision of the commissioner.[3]

■ Jones' argument for overturning the commissioner's decision is that he had no knowledge that Farmers Group was an unlicensed company operating in Pennsylvania. Jones states that the commissioner is at fault because the department knew that Farmers Group was not authorized to do business in Pennsylvania yet did not take action notifying Jones or the public.

However, the sections the commissioner charges Jones with violating do not require proof of an agent's subjective knowledge of a company's status as a prerequisite to a violation.

The commissioner's order may be overturned only if her findings lack substantial evidence support, she committed an error of law, or she violated Jones' constitutional rights.

■ There is substantial evidence in the record that Jones solicited business for Farmers Group and thus violated § 209 of the Act, 40 P.S. § 47. Three individuals who are members of I.D. Craig testified that they received letters from Jones on February 2, February 16 and March 16, 1990, requesting that they enroll in Farmers Group. One witness testified that Jones collected five premium checks from her.

There is also substantial evidence that Jones acted as an agent for Farmers Group and violated § 3(a) of the Surplus Line Law, 40 P.S. § 1006.3(a). Jones personally signed the

3. This court's scope of review is limited to a determination of whether constitutional rights were violated, an error of law was committed or whether findings of fact are supported by substantial evidence. *McDonnell v. Pennsylvania Insurance Department,* 94 Pa.Commonwealth Ct. 381, 503 A.2d 1042 (1986).

letters sent to I.D. Craig members and in the letters identified himself as president of Glenn–Price Inc.

Section 639 of the Act, 40 P.S. § 279, provides that the commissioner may suspend or revoke a license and/or impose a fine up to $1,000 if satisfactory evidence exists indicating that a licensed person has violated certain sections under the Act, including §§ 603 and 605, sections Jones is charged with here.

This court has stated that the commissioner is given broad discretion to determine penalties under § 639. *Novak v. Pennsylvania Insurance Department*, 106 Pa.Commonwealth Ct. 232, 525 A.2d 1258 (1987). Thus, the commissioner did not commit an error of law in suspending Jones' license for six months.

Also, the commissioner did not violate Jones' constitutional rights. In *Fumo v. Commonwealth Department of Insurance*, 58 Pa.Commonwealth Ct. 392, 427 A.2d 1259 (1981), this court addressed the issue of whether § 603 is unconstitutionally vague. This court stated that although "good business reputation" and "worthy of a license" are inexact and somewhat vague, the regulations found in 31 Pa.Code § 33.7(a) sufficiently clarify the language in the Act.

Because the commissioner did not abuse her discretion, nor commit an error of law, nor violate Jones' constitutional rights, the commissioner did not err in imposing a civil penalty of $71,000 and suspending Jones' license for six months.

Accordingly, we affirm the order of the commissioner.

## ORDER

NOW, June 1, 1992, the decision of the commissioner dated September 4, 1991, No. P90–09–51, is affirmed.